# In the United States Court of Federal Claims

No. 08-920L

(Filed: January 27, 2015)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| **GENEVA ROCK PRODUCTS, INC.,** ) | Rails to trails case; class action; |
| **and FOX RIDGE INVESTMENTS,** ) | settlement; fairness of settlement; |
| **LLC, on their behalf and on behalf of a** ) | reasonable attorneys' fees to class |
| **class of others similarly situated,** ) | counsel; application of RCFC 23(h); |
| ) | lodestar cross-check |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

J. Robert Sears, Baker Sterchi Cowden & Rice, LLC, St. Louis, Missouri, for plaintiffs. With him on the briefs were Steven M. Wald, Thomas S. Stewart, and Elizabeth G. McCulley, Baker Sterchi Cowden & Rice, LLC, St. Louis, Missouri, and Kansas City, Missouri.

E. Barret Atwood, Trial Attorney, Natural Resources Section, Environmental and Natural Resources Division, United States Department of Justice, San Francisco, California, and Frank James Singer, Natural Resources Section, Environmental and Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant. With Mr. Atwood on the briefs were Sam Hirsch, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., and Julie Thrower, Trial Attorney, Natural Resources Section, Environmental and Natural Resources Division, United States Department of Justice, San Francisco, California.

## OPINION AND ORDER

LETTOW, Judge.

This rails-to-trails class action comes before the court on plaintiffs' Motion for Approval of Settlement and Motion for Court Approval of Fees. The class of plaintiffs consists of twenty-two claimants who allege that the federal government effected an uncompensated taking of their property when the Surface Transportation Board ("STB") acted pursuant to Section 208 of the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, § 208, 97 Stat. 42, 48 (codified at 16 U.S.C. § 1247(d)) to issue a Notice of Interim Trail Use ("NITU") authorizing a

recreational trail on parcels of plaintiffs' property that were previously encumbered by a railroad-purposes easement. Plaintiffs Geneva Rock Products, Inc. and Fox Ridge Investments, LLC (collectively, "Geneva Rock") filed suit in this court as representatives of a class of landowners alleging a taking of the landowners' property by the federal government in contravention with the Fifth Amendment and requesting certification of the class. The court granted plaintiffs' motion to certify the class on September 15, 2011. *See Geneva Rock Prods., Inc. v. United States* ("*Geneva Rock I*"), 100 Fed. Cl. 778, 792 (2011). Thereafter, the parties filed cross-motions for partial summary judgment relating to liability and damages. The court granted in part and denied in part the parties' cross-motions, assigning liability to the government for the taking of certain parcels but not others and delineating the existence of triable issues of fact relating to the ownership of particular plots of land. *Geneva Rock Prods., Inc. v. United States* ("*Geneva Rock II*"), 107 Fed. Cl. 166, 167 (2012). The court further determined that the proper method for calculating damages would be premised upon the difference in value of the properties at issue with and without the burden of the trail easement. *Id.*[1]

In light of the court's findings and conclusions, Geneva Rock and the government entered into settlement negotiations regarding the claims in the class action. The parties reached a compromise agreement which provides that the class is owed just compensation plus interest from the date of the taking. The parties additionally agreed upon the amount of statutory attorneys' fees and litigation costs to be paid to plaintiffs' class counsel under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("Uniform Relocation Act"), 42 U.S.C. § 4654(c).[2] The court preliminarily approved the class action settlement solely for the purpose of providing class members notice of, and an opportunity to comment on, the agreement. After being served the notice of the settlement, no class member objected to its terms or to class counsel's request for attorneys' fees. A hearing on the fairness of the settlement agreement and reasonableness of fees was held on November 24, 2014. Thereafter,

---

[1] The court also reopened the opt-in class period to admit newly discovered potential plaintiffs. *Geneva Rock II*, 107 Fed. Cl. at 176-77. As a result, a limited number of landowners identified by class counsel during discovery, other pretrial preparatory steps, and summary judgment briefing joined the opt-in class.

[2] 42 U.S.C. § 4654 provides for the reimbursement of reasonable attorneys' fees and costs to a prevailing plaintiff. The statute states in pertinent part:

> The court rendering a judgment for the plaintiff in a proceeding brought under section 1346(a)(2) or 1491 of Title 28, awarding compensation for the taking of property by a [f]ederal agency, or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.

42 U.S.C. § 4654(c).

supplemental submissions were received to address issues being briefed on appeal in a somewhat similar case involving contested attorneys' fees. *See Haggart v. United States*, 116 Fed. Cl. 131 (2014), *appeal pending sub nom. Haggart v. Woodley*, No. 14-5106 (Fed. Cir.).

For the reasons set forth below, the court concludes that the terms of the settlement agreement are fair, reasonable, and adequate. The court further holds that plaintiffs' class counsel shall be awarded 17½% of the class award and that statutory attorneys' fees shall be credited, dollar-for-dollar, to the class.

## BACKGROUND[3]

### A. The Takings Claim

At the crux of this class action suit is a 3.23-mile abandoned rail line called Provo Industrial Lead, which extends from milepost 772, near Cutler, Utah to milepost 775.23, near Mount, Utah. *Geneva Rock I*, 100 Fed. Cl. at 779. Since its inception in the late 1800s, this rail corridor has been burdened by an easement for railroad purposes, which was originally granted to Utah Southern Railroad Company under the 1875 General Railroad Right-of-Way Act. *See id.* at 780.[4] The railroad-purposes easement was subsequently assigned to Union Pacific Railroad Company ("Union Pacific"), which ceased using the corridor as a railroad in the early 2000s. *See id.* at 780-81. Union Pacific proceeded to file a notice of exemption with STB to allow the company to abandon its interest in the rail line. One month after the petition was filed, the Utah Transit Authority ("UTA") requested a NITU from STB, to acquire an interest in the rail line and to assume financial responsibility for recreational trail use along the corridor. *Geneva Rock II*, 107 Fed. Cl. at 168. The NITU was granted, and soon thereafter, Union Pacific and UTA entered into a Trail Use Agreement in March 2003, whereby the Provo Industrial Lead line was transferred to UTA for use as a public recreational trail, notwithstanding retention of a potential railroad-purposes use in the future. *See id.* Just short of six years after the NITU was granted, on December 30, 2008, plaintiffs filed suit in this court alleging that the NITU amounted to an abandonment of the railroad-purposes easement and effected a taking for those individuals with land underlying or abutting the 3.23-mile Provo Industrial Lead line. *Id.*

---

[3]This recitation of facts supplements the court's earlier findings reported in *Geneva Rock I*, 100 Fed. Cl. 778, and *Geneva Rock II*, 107 Fed. Cl. 166.

[4]Earlier in the case, the government contended that recreational trail use fell within the scope of the easement originally granted to the Utah Southern Railroad Company under the 1875 Act. The court rejected that contention, holding that the 1875 Act did not provide or suggest that easements granted to railroads under that Act would encompass any additional uses beyond railroad purposes. *Geneva Rock II*, 107 Fed. Cl. at 170-73 (relying on *Great N. Ry. v. United States*, 315 U.S. 262, 272 (1942); *Railway Co. v. Alling*, 99 U.S. 463, 480 (1978); *Hash v. United States*, 403 F.3d 1208, 1311 (Fed. Cir. 2005); and *Beres v. United States*, 104 Fed. Cl. 408, 423-24 (2012)). In *Marvin M. Brandt Revocable Trust v. United States*, __ U.S. __, 134 S. Ct. 1257 (2014), the Supreme Court confirmed this interpretation.

### B.   The Settlement Agreement

In preparing for trial on damages, both parties hired expert appraisers to independently evaluate the fair market value of the property interests at issue.  *See* Pls.' Mot. for Court Approval of Fees and Proposed Division of the Common Fund ("Pls.' Mot. for Fees") at 7-9, ECF No. 106.  Class counsel's appraiser employed a valuation methodology that consisted of classifying each parcel of land based upon the character and use of the property.  *See* Pls.' Mot. for Approval of Notice to Class Members Regarding Proposed Class Action Settlement and Request to Set Date for Public Hearing ("Pls.' Mot. for Settlement Approval") at 6, ECF No. 105.  The appraiser valued each property "using a 'before and after' analysis, meaning that he appraised each parcel based upon its highest and best use before the taking (without any easement present) and after the taking (with the presence of a perpetual easement for public trial use with the possibility of railroad reactivation)."  *Id.* at 5, Ex. C.[5]  A land use expert and an engineer were also retained by class counsel to assist in calculating the "before" condition, *i.e.*, the property values without an easement.  Pls.' Mot. for Fees at 8-9.  An appraiser engaged by the government also valued the properties using the same methodology, undertaking as well a review of the appraisal report prepared by the appraiser for the class plaintiffs.  Pls.' Mot. for Settlement Approval at 6; *see also* United States' Response to Plaintiffs' Motion for Court Approval of Fees and Proposed Division of the Common Fund ("Def.'s Fees Response") at 6-7, ECF No. 108.  Where the government's appraiser disagreed with class counsel's appraiser, he provided his own valuation estimates.  *See* Def.'s Fees Response at 7 ("Plaintiffs' appraiser valued 19 different parcels; the United States' appraiser disagreed that one parcel should be subdivided and he accordingly valued 18 different parcels.").

Shortly before the deposition of the appraiser retained by the government, the parties came to a resolution of all twenty-two plaintiffs' claims, reaching a settlement which provided for the payment of principal, interest, and statutory attorneys' fees and costs.  Pls.' Mot. for Fees at 10; *see also* Second Quarterly Joint Status Report (Nov. 4, 2013), ECF No. 98.  These agreed values produced a total settlement award of $24,032,540.91, consisting of (a) $14,094,500.00 in principal for the value of the property taken, (b) $8,918,488.58 in interest calculated at a rate of 4.2% through November 30, 2014,[6] and (c) $696,753.80 in statutory attorneys' fees and $322,798.53 in litigation costs to be reimbursed to class counsel under the Uniform Relocation Act.  *See* Pls.' Mot. for Settlement Approval at 10-11; *see also* United States' Response to Pls.' Mot. For Approval of Notice to Class Members Regarding Proposed Class Action Settlement and Request to Set Date for Public Hearing at 6-7, ECF No. 107.  The amount of principal and interest does not reflect a lump sum that is divided evenly among the claimants.  Rather, each

---

[5]This method is consistent with the court's determination of the proper approach to calculation of damages.  *See Geneva Rock II*, 107 Fed. Cl. at 167.

[6]The parties calculated interest through November 30, 2014, the estimated date of payment of the settlement.  The parties agree, however, that the government is responsible for paying the amount of interest that will accrue from November 30, 2014, through the date of actual payment.  Pls.' Mot. for Settlement Approval at 11.

class member will be allocated a share of that total amount based on individual property valuations. *See* Order of Oct. 7, 2014 at Attach., ECF No. 111.

The settlement agreement further identifies two claimants whose claims were dismissed following the court's decision on the parties' cross-motions for summary judgment. *See* Pls.' Mot. for Settlement Approval at Ex. B. Those claims shall be dismissed with prejudice and without compensation.

### C. The Contingent Fee Understanding

In addition to approval of the settlement, plaintiffs' class counsel seeks approval of attorneys' fees pursuant to Rule 23(h) of the Court of Federal Claims ("RCFC"). Specifically, class counsel requests a 35% contingent fee, applied against the total amount of recovery (principal plus interest) for the class. Pls.' Mot. for Fees at 1.[7] Under the terms of the settlement, the class award totals $23,012,988.58,[8] 35% of which amounts to $8,054,546.00 in attorneys' fees.[9] Def.'s Fees Response at 1-2. Class counsel's request would result in $8,377,344.53 in attorneys' fees and costs,[10] leaving $15,655,196.38 for the class.[11]

In support of its request, class counsel states that the attorneys expended significant time and resources litigating this case. Pls.' Mot. for Fees at 2-10, 13. Class counsel further maintains that while no individual signed a contingent fee agreement,[12] each claimant to the class

---

[7]Class counsel has not asked the court to apply the contingent fee to the total settlement award, as that would allow counsel to recover a contingent fee on the statutory fee as well as on the principal and interest. *See Haggart*, 116 Fed. Cl. at 144; *Voth Oil Co., Inc. v. United States*, 108 Fed. Cl. 98, 105 (2012). "[W]hen plaintiffs receive fees and costs pursuant to a fee-shifting statute like the [Uniform Relocation Act], plaintiffs' counsel may not receive both the full value of the statutory fee as well as the full value of their contingent fee." *Voth*, 108 Fed. Cl. at 105. Nonetheless, class counsel maintains that it "believes it has the legal right" to recover a contingent fee based on the total settlement award. Pls.' Mot. for Fees at 1 n.1.

[8]$14,094,500.00 (principal) + $8,918,488.58 (interest) = $23,012,988.58.

[9]Class counsel incorrectly calculated the amount of the settlement agreement to be $23,721,432.63 and consequently also erred in the computation of the requested fee amount. *Compare* Pls.' Mot. for Fees at 10, *with* Def.'s Fees Response at 2 n.2.

[10]$8,054,546 (35% contingent fee) + $322,798.53 (litigation costs) = $8,377,344.53.

[11]$24,032,540.91 (total settlement amount as of November 30, 2014) - $8,054,546.00 (35% contingent fee) - $696,753.80 (statutory attorneys' fees) - $322,798.53 (litigation costs) + $696,753.80 (statutory attorneys' fees credited to class) = $15,655,196.38. This value represents 65% of the total award.

[12]The day before filing its complaint, Geneva Rock received a contingent fee agreement from its original counsel providing that counsel would receive the greater of (a) 35% of the amount recovered in litigation, or (b) statutory attorneys' fees, if successful in litigation. Pls.'

action was repeatedly notified that class counsel would receive a 35% fee if successful in the litigation.  Pls.' Mot. for Fees at 2-5; *see also* Hr'g Tr. 40:17-21 (Nov. 24, 2014).[13]  Landowners seeking to opt into the class after the class was certified were notified in writing that class counsel would pursue a 35% contingent fee, and the opt-in class plaintiffs later consented to the proposed terms of the settlement, which included a specific diminution of the projected award to each class member to account for the contingent fee.  *Id.* at 4, 5.  Based on these disclosures, class counsel represents that all members who joined in this case and consented to the settlement agreement did so with the understanding and expectation that class counsel would receive 35% of the total recovery for the class, if successful.  *Id.* at 4.

The government ostensibly takes no position on fees, but in its response to class counsel's motion for fees, it implies that a 35% contingent fee is excessive, questions the existence of a common fund in this case, and comments on the use of a lodestar cross-check to determine the reasonableness of the fee award.  Def.'s Fees Response at 14.

### D.  Notice of Settlement to Class Members

An authorized representative of the United States Attorney General approved the terms of the parties' settlement on July 11, 2014, and the parties then proceeded to draft a joint motion for court approval of the settlement and a proposed notice that would be provided to class members.  *See* Fifth Quarterly Status Report (Aug. 8, 2014), ECF No. 104.  Geneva Rock and the government were unable to agree upon language to be contained in a proposed notice, and the government disputed the 35% fee requested by plaintiffs' class counsel.  Each party separately submitted a proposed notice to the court, and class counsel filed an accompanying motion for court approval of fees.  To resolve the divergent approaches taken by the parties, the court crafted a proposed notice that combined elements of both proposals and that described the agreed class award and statutory attorneys' fees and costs.  Order of Oct. 3, 2014, ECF No. 110.  The proposed notice also advised class members of class counsel's attendant request for court approval of fees and their right to participate in the fairness hearing.  *Id.*  At a hearing held on October 7, 2014, the parties proffered adjustments to the court's proposed notice, and the court then preliminarily approved the proposed settlement agreement and specified the notice of the settlement to be provided the class.  *See* Order of Oct. 7, 2014.  Promptly thereafter, class counsel issued the notice to class members.  The twenty-two class members responded to the notice, each approving the settlement and advising that they did not wish to take part in the fairness hearing.  That hearing was held telephonically on November 24, 2014.  Hr'g Tr. at 3:20-25.  Subsequently, the court and class counsel were made aware of the arguments about attorneys' fees being made by the government on appeal in *Haggart*, a somewhat similar case, and on December 19, 2014, class counsel provided a statement of position respecting those

---

Mot. for Fees at 2.  On June 10, 2009, the representation of Geneva Rock was transferred to the current class counsel under the same fee terms.  *Id.*  The agreement was never signed by Geneva Rock and no other class members have since signed a contingent fee agreement.  *See* Hr'g Tr. at 40:17-21.

[13]Further citations to the transcript of the hearing held on November 24, 2014 will omit a reference to the date.

issues.  *See* Class Counsel's Comment on the Government's Brief in the *Haggart* Appeal, ECF No. 125 (referring to Brief of United States as Defendant-Appellee, *Haggart v. Woodley*, No 14-5106 (Fed. Cir. Dec. 19, 2014)).

## ANALYSIS

Geneva Rock currently seeks approval of the settlement agreement with the government pursuant to RCFC 23(e) and also asks the court to approve a 35% contingent fee under RCFC 23(h).

### A.  Approval of the Settlement Agreement

While there is a strong judicial policy for settling class actions, the court nevertheless has a responsibility to oversee the settlement process and result.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (op. by Friendly, J.).  Pursuant to RCFC 23(e), a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval."  RCFC 23(e) further mandates the specific procedures that the court must follow when reviewing a proposed settlement, voluntary dismissal, or compromise:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) [Not used.]
>
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

RCFC 23(e)(1)-(5) (alteration in original).[14]

---

[14]In large respect, RCFC 23 mirrors Fed. R. Civ. P. 23.  While there are differences, cases from federal courts applying Fed. R. Civ. P. 23 are typically persuasive in this court.  *See Barnes v. United States*, 68 Fed. Cl. 492, 494 n.1 (2005).  The most important difference between these rules is that "unlike the F[ed. ]R[. ]C[iv. ]P[. ], the court's rule contemplates only opt-in class certifications, not opt-out classes.  The latter were viewed as inappropriate here because of the need for specificity in money judgments against the United States, and the fact that the court's injunctive powers—the typical focus of an opt-out class—are more limited than those of a district court."  RCFC 23 Rules Committee Note (2002 Revision); *see also Haggart*, 116 Fed. Cl. at 139 n.10.

The notice and hearing aspects of the Rule have been satisfied. The question remaining is whether the comprise agreement is "fair, reasonable, and adequate." RCFC 23(e)(2). In making this determination, the court must inquire into both the procedural and substantive fairness of the proposed settlement. *See Christensen v. United States*, 65 Fed. Cl. 625, 629 (2005) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). Substantive fairness is the primary concern; the court must evaluate the likely risks of potential litigation. *Weinberger*, 698 F.2d at 61; *see also Christensen*, 65 Fed. Cl. at 629. To that end, the court must apprise itself of all facts necessary to form an intelligent and objective decision pertaining to the chances of ultimate success if the claim were litigated. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). A further concern involves fairness of the "negotiating process by which the settlement was reached," *Weinberger*, 698 F.2d at 74, which rests on whether the settlement was a product of an arms-length negotiation conducted by an experienced counsel who has "engaged in the discovery[] necessary to effective representation of the class's interests," *id.*, *see also Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983) ("The trial judge determines fairness, reasonableness, and adequacy of a proposed settlement by considering . . . the negotiating process, examined in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves.") (citing *Weinberger*, 698 F.2d at 73), and *City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 465 (2d Cir. 1974), *overruled on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

While there are no definitive factors for evaluating substantive fairness of a settlement, courts have put forth the following as relevant considerations:

> (1) The relative strengths of plaintiffs' case in comparison to the proposed settlement, which necessarily takes into account:

>> (a) [t]he complexity, expense and likely duration of the litigation;

>> (b) the risks of establishing liability;

>> (c) the risks of establishing damages;

>> (d) the risks of maintaining the class action through trial;

>> (e) the reasonableness of the settlement fund in light of the best possible recovery;

>> (f) the reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation;

>> (g) the stage of the proceedings and the amount of discovery completed;

>> (h) the risks of maintaining the class action through trial;

8

(2) The recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsels' representation of the class;

(3) The reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms;

(4) The fairness of the settlement to the entire class; [and]

(5) The fairness of the provision for attorney fees . . . .

*Dauphin Island Prop. Owners Ass'n v. United States*, 90 Fed. Cl. 95, 102-03 (2009) (citing cases); *see also Raulerson v. United States*, 108 Fed. Cl. 675, 677 (2013) (considering pertinent factors when deciding reasonableness of a settlement). "The [c]ourt has considerable discretion regarding the weight to afford each factor given the factual context of the particular case before it." *Sabo v. United States*, 102 Fed. Cl. 619, 627 (2011); *see also Christensen*, 65 Fed. Cl. at 629 ("Courts apply these factors in light of 'the interest in encouraging settlements, particularly in class actions, which are often complex, drawn out proceedings demanding a large share of finite judicial resources.'") (quoting *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993)). With these principles in mind, the court turns to the proposed settlement agreement and the negotiations leading up to it.

The negotiating process preceding the settlement agreement was undertaken after the parties had made comprehensive preparations. Both parties conducted extensive arms-length negotiations making "adjustments to their respective estimates of just compensation . . . in light of each side's views on the strength and weaknesses of their legal and factual positions." Pls.' Mot. for Settlement Approval at 7. The parties informed the court of their progress, submitting detailed and publicly available status reports every ninety days regarding their efforts to resolve the case, which indicates that the negotiations were conducted with diligence and without collusion. *See* Docket Nos. 97-104; *see also* Hr'g Tr. at 4:18-23, 5:21-24 (Apr. 11, 2013). Class counsel demonstrated himself to be an adept litigator of rails-to-trails cases and a zealous advocate for the class members in this litigation. At the start of litigation, counsel successfully moved to certify the class, won a partial summary judgment motion relating to liability, and persuaded the court to reopen the class for the purpose of admitting newly discovered claimants. *See* Pls.' Mot. for Settlement Approval at 3-5. During the settlement process, class counsel made site visits and conducted an extensive appraisal process with professionally-certified appraisers, while working steadily on voluminous discovery involving the appraisal of the affected properties. *See id.* at 4-7. The court therefore deems the settlement to have been reached through an exemplary process. *See Hill v. State Street Corp.*, No. 09-12146-GAO, 2015 WL 127728, at *7 (D. Mass., Jan. 8, 2015) (evaluating counsel's preparatory steps in light of the complexity of the class claims).

The substantive terms of the parties' proposed settlement are also fair, reasonable, and adequate. The first consideration worthy of weight is whether those terms adequately reflect the

likely rewards of litigation in comparison to the proffered settlement.  *See Christensen*, 65 Fed. Cl. at 629.  Both parties have vigorously litigated all aspects of this rails-to-trail class action. Initially, the government challenged the suit on the basis of the statute of limitations, 28 U.S.C. § 2501, which resulted in a one-year stay of the case, pending resolution by the court of appeals of a comparable limitations issue in a different case.  *See* Pls.' Mot. for Fees at 3.[15]  In early 2012, the parties filed cross-motions for partial summary judgment relating to liability and damages.  The court found the government liable to the plaintiffs for the taking of their property and agreed with plaintiffs that the correct measure of damages would be the difference in the value of the land unencumbered by the trail easement and its value so encumbered.  *Geneva Rock II*, 107 Fed. Cl. at 167.  For certain parcels of land, issues of ownership were preserved for trial.  *See id.* at 175-76 ("The extensive development of this physical area in question, resulting in the splitting and transfer of parcels over the course of several decades, has contributed to the apparent uncertainty about ownership of the parcel(s) involved . . . .").

Despite plaintiffs' success on its cross-motion for partial summary judgment, litigating the class members' claims through trial would have been arduous and time-consuming.  Even if ownership of affected parcels could have been reached through further factual inquiry and research, and embodied in a stipulation, both parties would have spent significant time and resources developing expert testimony as to the competing fair market values for the parcels of land and would have engaged in voluminous discovery relating to damages.  *See* Hr'g Tr. at 5:1 to 8:1 (Apr. 11, 2013).  Even if plaintiffs were to have prevailed at trial, the government may have continued to litigate the case vigorously by appealing issues, thus delaying payment of any award to the twenty-two claimants.  Moreover, class counsel's time and expenses would have continued to climb during an appellate process.

By contrast, the settlement agreement results in a substantial and recognizable recovery for the entire class, obviating the attendant risk, complexity, and expense of a trial.  *See Sabo*, 102 Fed. Cl. at 628 ("[I]f the settlement is approved, time- and resource-consuming litigation would be avoided, and plaintiffs would receive relief more quickly than if they proceeded with litigation and succeeded on the merits."); *see also Christensen*, 65 Fed. Cl. at 631.  The complexities and uncertainties of litigation, compared to the tangible settlement amount, suggest that the terms of the settlement adequately reflect the strengths and weaknesses of class counsel's case.

Additionally, the court must examine the fairness of the agreed statutory attorneys' fees, which are included as part of the settlement pending before the court for approval.  In the settlement, the parties agreed that statutory attorneys' fees and expenses would be set at $1,019,552.33, consisting of $696,753.80 in fees and $322,798.53 in litigation costs.  To ensure that the agreement respecting fees and costs is reasonable, the court compares the settlement value to the amount class counsel would have received after a decision by the court applying the Uniform Relocation Act.  *Raulerson*, 108 Fed. Cl. at 679.  Pursuant to the Uniform Relocation Act, in a settlement, the Attorney General is initially responsible for determining reasonable

---

[15]The decision by the Federal Circuit in *Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010), favored the legal position taken by Geneva Rock in this case.  *See Geneva Rock I*, 100 Fed. Cl. at 781.

attorneys' fees. *See* 42 U.S.C. § 4654(c). When the court evaluates amounts of such a settlement, the Attorney General's opinion is entitled to some deference, and the court need not conduct the same in-depth analysis as it would if it were itself determining the award. *See Raulerson*, 108 Fed. Cl. at 680; *see also Moore v. United States*, 63 Fed. Cl. 781, 785 n.6 (2005). Thus, it is not necessary for the court to calculate the fees and costs with mathematical precision; it is sufficient that the settlement amount is a reasonable approximation of the sum class counsel would have received under the statute. *Moore*, 63 Fed. Cl. at 785.

To determine a reasonable fee under the Uniform Relocation Act, courts apply a lodestar figure, which "is derived by multiplying the hours reasonably expended in pursuit of a successful claim by each attorney's reasonable hourly rate." *Moore*, 63 Fed. Cl. at 785 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983); *Washington Metro. Area Transit Auth. v. United States*, 57 Fed. Cl. 148 (2003); *Applegate v. United States*, 52 Fed. Cl. 751 (2002)). In this instance, class counsel states that approximately 2,600 hours of time has been expended on behalf of the class over the course of five years, and over $320,000 in awardable expenses has been incurred. *See* Class Counsel's Reply to the United States' Response to Motion for Approval of Fees ("Pls.' Reply on Mot. for Fees") at 12, ECF No. 112. To date, class counsel has not received any recompense for work on the matter. *See id.* at 3 n.1. While the parties have not supplied the court with any information regarding the rates typically charged for this type of work, dividing $696,753.80 by 2,600 hours yields an average rate of approximately $268 per hour. That average hourly rate is not excessive, and it could be considered low for a rails-to-trails suit. *See Haggart*, 116 Fed. Cl. at 142. The court finds the agreed amount for statutory attorneys' fees and costs to be reasonable.

Still further, the court must consider the responses of the class members to the proposed settlement, "taking into account the adequacy of notice to the class members of the settlement terms." *Dauphin Island*, 90 Fed. Cl. at 103. Here, every class member received a comprehensive notice of the proposed settlement. The notice outlined the terms of the agreement, identified the number of claimants in the class action, provided information for the fairness hearing, and enclosed a form for members to return to class counsel. *See* Order of Oct. 7, 2014; *see also* Notice of Class Members' Responses to Class Action Settlement Notice ("Class Responses") at 1-2, ECF No. 115.[16] All twenty-two claimants responded to the notice, and every individual expressly agreed that the settlement terms were fair and reasonable. *See* Class Responses at 1 & Ex. A; *see also* Supplement to Notice of Class Members' Responses to Class Action Settlement Notice at 1 & Ex. A, ECF No. 116. The unanimous approval of the class strongly weighs in favor of fairness under RCFC 23(e). *See Sabo*, 102 Fed. Cl. at 629 ("When only a small number of class members object to a proposed settlement, the [c]ourt should consider that as evidence weighing in favor of approving the settlement.") (quoting *Dauphin Island*, 90 Fed. Cl. at 104 (in turn quoting *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990))); *see also Nat'l Treasury Emps. Union v. United States*, 54 Fed. Cl. 791, 798

---

[16]Class counsel represents that the class was also regularly "informed of the work and the process leading up to the settlement agreement" and was encouraged to contact class counsel with any questions regarding the settlement. Pls.' Mot. for Settlement Approval at 7-8, 11.

(2002) ("[T]here is no question that [a] small number of objections weighs in favor of the court's approval.").[17]

Lastly, the court must ensure that the settlement amount is fair to the class as a whole. This factor is met when the proposed settlement is "uniformly available, yet simultaneously tailored to distinct groups within the class." *Sabo*, 102 Fed. Cl. at 629 (internal citations omitted). In this case, class counsel's appraiser independently investigated every affected property and had full access to the class members, with whom he discussed the property's characteristics and value. *See* Pls.' Mot. for Settlement Approval at 5, 7. With the assistance of class counsel and various planning and engineering professionals, class counsel's appraiser prepared a report providing an appraisal for each parcel of land, *id.* at Ex. C, *see also* Pls.' Mot. for Fees at 9, which was critiqued by the government's experienced appraiser, Def.'s Fees Response at 6-7. Given that the relief is available to the entire class and that both appraisers considered each property when determining fair market value, this factor has been satisfied.

In sum, the court accepts the proposed settlement as being fair, reasonable, and adequate.

## B.  Approval of Attorneys' Fees

"The courts have the inherent power to supervise the collection of attorneys' fees and monitor contingent fee agreements, even where the validity of the fee contract itself has not been challenged by the parties." *Voth*, 108 Fed. Cl. at 105. The court evaluates attorneys' fee awards under a reasonableness standard set forth in RCFC 23(h). *See* RCFC 23(h) ("[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."). When establishing attorneys' fees in class actions, courts may either use the lodestar method or award fees based upon a percentage of the settlement agreement. *Goldberger*, 209 F.3d at 47-48; *see also In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 113 n.20 (D.D.C. 2013), *appeal dismissed*, No. 14-7007, 2014 WL 1378762 (D.C. Cir. Apr. 3, 2014) (recognizing that some courts cross-check the percentage award against the results of a lodestar calculation to determine whether that award is a reasonable approximation of the attorney's time and expertise). Regardless of the method, the court may look to several factors traditionally applied in class action suits when establishing a reasonable fee under RCFC 23(h). *See Raulerson*, 108 Fed. Cl. at 679. The relevant factors considered by courts include:

1.  The quality of counsel;

2.  The complexity and duration of the litigation;

3.  The risk of nonrecovery;

---

[17]It is also cogent and instructive that the entire class acted with alacrity to submit their social security numbers or taxpayer identification numbers to the United States, thus anticipating and expecting payment from the settlement award. *See* Pls.' Mot. for Settlement Approval at 8.

4.  The fee that likely would have been negotiated between private parties in similar cases;

5.  Any class members' objections to the settlement terms or fees requested by class counsel;

6.  The percentage applied in other class actions; and

7.  The size of the award.

*Id.* at 679-80; *see also Moore*, 63 Fed. Cl. at 787 (citing Manual for Complex Litigation (Fourth) § 14.121 (2004)).

     1.  *The government's objections.*

A threshold issue raised in the briefing on plaintiffs' Motion for Fees is whether the government has the enablement and capacity to challenge class counsel's fee request.  The government attempts to obfuscate the law of standing by arguing that that it may object to the fee award as "a party to the case in chief."  Def.'s Fees Response at 3-5.  Given that no class member has objected to the fee award and that neither the government's liability nor its susceptibility to damages is in any way contingent on, or affected by, the amount of attorneys' fee awarded apart from the statutory fee, the government is not in a position to establish standing to challenge the contingent fee.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 489 (1980) ("[Defendant] had no cognizable interest in further litigation between the class and its lawyers over the amount of the fees ultimately awarded from money belonging to the class."); *see also Copeland v. Marshall*, 641 F.2d 880, 905 n.57 (D.C. Cir. 1980) ("In common fund cases, the losing party no longer continues to have an interest in the fund; the contest becomes one between the successful plaintiff and their attorneys over division of the bounty.") (internal quotation marks omitted); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 125 (S.D.N.Y. 2009), *aff'd sub nom. Priceline.com, Inc. v. Silberman*, 405 Fed. Appx. 532 (2d Cir. 2010) (recognizing that because the government is not a member of the class, it lacks standing to object to the amount of requested attorneys' fees); *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 511, 520, 970 A.2d 583, 590-92 (2009) (collecting precedents).

     The government further suggests that it has standing to challenge class counsel's attorneys' fees because "there is no one at counsel's table to speak on behalf of the class members."  Def.'s Fees Response at 4-5.  Taking this argument to its logical conclusion suggests that "anyone, regardless of whether they have a connection to the class or case, could submit objections to a proposed attorneys' fee award, in hopes that he or she might 'assist' the court in reaching reasonable fee."  *Tennille v. Western Union Co.*, No. 09-cv-00938-MSK-KMT, 2013 WL 6920449, at *6 (D. Colo. Dec. 31, 2013), *report and recommendation adopted as modified in other respects*, No. 09-cv-00938-JLK-KMT, 2014 WL 5394624 (D. Colo. Oct. 15, 2014).  This result would undermine the purpose of RCFC 23(h) for class actions, *see infra*, at 14-16.

     Under RCFC 23(h), the court has a fiduciary duty to independently review the reasonableness of class counsel's proposed fee.  Although the court does not directly address the

concerns advanced by the government, it does consider factors similar to those raised by the government in its Response to Plaintiffs' Motion for Court Approval of Fees, *see infra*, at 15-16.

    2.  *"[R]easonable attorney's fees."*

    As discussed previously, class counsel is requesting a 35% contingent fee of the principal and interest payments. Class counsel's main justification for recovering a 35% fee is predicated on the contingent fee arrangement with Geneva Rock. According to class counsel, Geneva Rock agreed to pay class counsel the greater of (a) 35% of the amount recovered for each client, or (b) statutory attorneys' fees. Pls.' Mot. for Fees at 2. Further, class counsel avers that all landowners who joined in this case and consented to the settlement agreement did so with the similar understanding that they too would pay class counsel 35% of their total recovery. *Id.* at 4-5, Ex. B; *see also* Hr'g Tr. at 3:20-25. Awareness of a contingent fee arrangement, according to class counsel, "[is] considered highly presumptive of the reasonableness of the 35% award of attorneys' fees out of the land damage award plus interest." Pls.' Mot. for Fees at 15.

    The court finds this argument unavailing. First, there is no express contingent fee agreement with Geneva Rock. At the fairness hearing, class counsel conceded that Geneva Rock never signed a writing setting forth the terms of the contingent fee, Hr'g Tr. 40:17-21, and accordingly, the fee arrangement negotiated by class counsel fails to adhere to the law governing contingent fee agreements requiring them to be in writing. *See* Rule 1.5(c) of the D.C. Rules of Prof'l Conduct; *see also* Rule 1.5(c) of the Utah Rules of Prof'l Conduct.[18] Second, while class members were notified of class counsel's intent to collect attorneys' fees in the amount of 35%, that notice, and class members' acquiescence, is insufficient to create a presumption of reasonableness. *See Moore*, 63 Fed Cl. at 787 ("By itself, the fee arrangement is insufficient to show that counsel's requested fee is reasonable."); *see also Shelden v. United States*, 41 Fed. Cl. 347, 350 (1998), *appeal dismissed*, 194 F.3d 1330 (Fed. Cir. 1999) ("A contingent fee agreement . . . [is] only one factor to consider . . . .") (citing *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989)). The court must determine reasonableness in light of all of the factual circumstances in the case. *See* RCFC 23(h); *see also Haggart*, 116 Fed. Cl. at 145.

    In further support of a 35% fee, class counsel argues that the quality of representation was exemplary and that the litigation was complicated by numerous legal issues and by a risk of non-recovery. *See* Pls.' Mot. For Fees, at 13; *see also* Hr'g Tr. 10:1-20, 12:7 to 19:22. The court concurs with class counsel's statements, but agreement in that regard does not mandate acceptance of the requested fee award. As an initial matter, the court recognizes that when awarding a percentage of fees, the relationship between plaintiffs and their attorneys becomes adversarial. *See Copeland v. Marshall*, 641 F.2d 880, 905 n.57 (D.C. Cir. 1980) (identifying that in class actions, "the contest becomes one between the successful plaintiffs and their attorneys over division of the bounty." (citing *Boeing Co. v. Van Gemert*, 444 U.S. 47 (1980)). Moreover, "class lawyers are naturally very interested in the fee component of any settlement, while the

---

    [18]*See* Rule 1.5(c) of the Model Rules of Prof'l Conduct (providing that contingent fee agreements are valid if "in writing signed by the client"); Rule 1.5(c) of the Utah Rules of Prof'l conduct (same); Rule 1.5(c) of the D. C. Rules of Prof'l Conduct (same). The court considers that is unnecessary to decide whether Utah's or another state's rules of professional conduct apply to this particular case.

defendants care only about the size of the settlement, including fees," *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011), *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993), "providing class counsel with the opportunity to trade a lower recovery for the class in favor of a higher percentage of attorneys' fees," *Quimby v. United States*, 107 Fed. Cl. 126, 134 (2012). Therefore, the court is obliged to act as a fiduciary for the class, "ensuring that the amount and mode of payment of attorney[s'] fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." Fed. R. Civ. P. 23 advisory committee's note, 2003 amendments, Subdivision (h). At the same time, the court must guarantee that attorneys' fees are substantial enough to provide counsel with an adequate incentive to bring class action suits, especially in instances where individual lawsuits would not be cost-effective. *See Haggart*, 116 Fed. Cl. at 148 (stating that the percentage of attorneys' fees awarded must "not discourage attorneys from representing class members in rails-to-trails taking actions"); *see also In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001) (recognizing that attorneys' fees must "ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class.").

With these considerations in mind, the court finds that an award of 17½% is a fair and proper fee under RCFC 23(h). The reduction of fees by half takes into account that there are relatively few class members in this rails-to-trails class action, which correlates to the amount of work class counsel had to perform. *See Haggart*, 116 Fed. Cl. at 148. Moreover, a lodestar cross-check reveals that the court's recommended fee award reasonably reflects the hard work of counsel and avoids a windfall for plaintiffs' attorney.[19]

Notably, as one district court observed, the lodestar cross-check provides information for the court's consideration, not a mandate:

> The lodestar multiplier does not need to fall within a specific range, but a comparison to the lodestar multipliers in similar cases may provide additional guidance to the court. *Rite Aid*, 396 F.3d at 307. Nevertheless, 'the lodestar cross-check does not trump the primary reliance on the percentage of common fund method.' *Id.*

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litig.*, 553 F. Supp. 2d 442, 486 (E.D. Pa. 2008), *judgment entered*, No. 99-20593, 2008 WL 2890878 (E.D. Pa. July 21, 2008), *aff'd sub nom. In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009).

When cross-checking an award, "the hours documented by counsel need not be exhaustively scrutinized by the . . . court." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d

---

[19]A cross-check on the percentage of the award is performed by multiplying the hours worked by a reasonable hourly billing rate, which provides the court with the lodestar figure. The proposed fee award is then divided by that amount, which results in a lodestar multiplier. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305-06 (3d Cir. 2005). A multiplier that is too high suggests that the percentage of the award is excessive and should be reduced. *Id.* at 306.

319, 355 (S.D.N.Y. 2005) (quoting *Goldberger*, 209 F.3d at 50); *see also Rite Aid*, 396 F.3d at 306 ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."). Here, the statutory fee amount of $696,753.80 under the Uniform Relocation Act approximates the lodestar amount and will be used as a starting point for the cross-check. *See Haggart*, 116 Fed. Cl. at 148. This amount must be augmented by $50,000 to reflect the additional time that has been and will be spent by class counsel on the request for the court's approval of the settlement, the fairness hearing and supplemental submissions, and further settlement obligations. *See Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *7 (D. Conn. July 31, 2014) (taking into account future steps in completing the fairness proceedings and post-settlement processes, in addressing the lodestar). Since filing the pending motions, class counsel has continued to work diligently on the case; those efforts include providing a revised notice to class members, gathering responses by those members, preparing for and participating in the fairness hearing, and addressing the government's evolving posture regarding fee awards. Class counsel will continue to spend hours administering the settlement agreement and assisting class members with the claims process. Adding together the amount of work expended thus far with class counsel's post-settlement efforts results in lodestar amount of $746,753.80. An award of 17½% of the principal and interest produces a lodestar multiplier of 5.39.[20]

In this case, an award 5.39 times the lodestar is reasonable under RCFC 23(h), given the complexity of the litigation, the diligent and skillful work by class counsel, and the pendency of the case for over six years. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 770 (S.D. Ohio 2007) ("[An] award of . . . 6 times the lodestar . . . honors [l]ead [c]ounsel's excellent recovery, considerable effort and time, and high quality of lawyering . . . and will incentivize attorneys to undertake similar cases in the future."); *see also In re Enron Corp. Sec., Derivative & Erisa Litig.*, 586 F. Supp. 2d 732, 798-99 (S.D. Tex. 2008) (approving a lodestar multiplier of 5.39 and acknowledging that "[lodestar] multipliers above 4 have become relatively common over the last dozen years."); *Bozak*, 2014 WL 3778211, at *7 (compiling a listing of cases in which the lodestar multiplier ranged from 2.09 to 8.74); *cf. In re Fed. Nat'l Mortg. Ass'n Sec. Litig.*, 4 F. Supp. 3d at 112-13 (applying factors that include the complexity of the litigation, the exemplary performance of class counsel, the lengthy duration of the case, and the lack of any objections to the fee request). Here, class counsel faced significant challenges in defeating defendant's motions and establishing damages in the absence of controlling precedent at the time the suit was brought. Pls.' Mot. for Fees at 2-3, 6-10. Class counsel obtained a large settlement award for the class, and not surprisingly, all twenty-two class members have consented to class counsel's requested fee award. *See* Class Responses at 1 & Ex. A; *see also* Supplement to Notice of Class Members' Responses to Class Action Settlement Notice at 1 & Ex. A.

The court recognizes that a lodestar multiplier of 5.39 is somewhat above average, but still well within an acceptable range. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (charting multipliers in common fund cases). The multiplier is justified by the factors noted above, and the circumstance that the resulting fee award is half that contemplated

---

[20]$4,027,273 (17½% of principal and interest as of November 30, 2014) / $746,753.80 (lodestar figure) = 5.39.

by the contingent-fee understanding that appeared to exist among the class members and counsel. *See* Hill, 2015 WL 127728, at *17-*20 (approving a contingency fee award of 17% to class counsel after analyzing the size of the fund and the number of persons involved, the skill and diligence of class counsel, the complexity and duration of the litigation, the time and effort devoted by class counsel, awards in similar cases, and the reaction of the settlement class).  This fee therefore reflects a reasonable fee under RCFC 23(h).

In sum, the facts and circumstances of this case warrant an attorneys' fee award of 17½% of the principal and interest payments encompassed by the settlement.

## CONCLUSION

For the reasons stated, plaintiffs' Motion for the Approval of Settlement is GRANTED, and plaintiffs' Motion for Court Approval of Fees is GRANTED IN PART.  The total settlement award to class plaintiffs is $24,032,540.91, consisting of (a) $14,094,500.00 in principal for the value of the property taken, (b) $8,918,488.58 in interest calculated through November 30, 2014, and (c) $696,753.80 in statutory attorneys' fees and $322,798.53 in litigation costs, both under the Uniform Relocation Act.  Class counsel is entitled to and shall retain a 17½% contingent fee, which fee shall be calculated upon a base amount consisting of the principal and interest payments specified in the settlement agreement.  Counsel shall retain the agreed statutory fee and costs.  Because class counsel shall retain the agreed statutory fee, class members shall receive a dollar-for-dollar credit against the contingent fee for the statutory fee paid by the government.

Class counsel shall receive the settlement award, shall disburse payments in accord with the settlement agreement, and shall file a notice of compliance once payment has been made.  To account for the delay in payment after November 30, 2014, the total interest paid by the government shall increase until the date the judgment is paid using the same method of interest computation as that employed in the settlement agreement, at an annual interest rate of 4.2%.  The contingent fee to which class counsel is entitled shall be adjusted upward accordingly.

The claims of those class members respecting which the government has previously been granted summary judgment on liability are dismissed, as are those whose claims are not listed for an award in the settlement agreement.

The clerk will enter judgment in accord with this disposition.  Costs have already been encompassed in the settlement agreement.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge